## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ARA, INC., | Civil No. 12-2812 (JRT/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| BARNES PERSONNEL MANAGEMENT, INC., BARNES EMPLOYMENT GROUP WEST COAST, INC., and MARSHALL TODD BARNES, | |
| Defendants. | |

Daniel J. Cragg and Vince C. Reuter, **ECKLAND & BLANDO, LLP**, 10 South Fifth Street, Suite 800, Minneapolis, MN 55402, for plaintiff.

Scott Matthew Cody, **TARSHISH CODY, PLC**, 6337 Penn Avenue South, Richfield, MN 55423, for defendants.

Plaintiff ARA, Inc. ("ARA") brings this action seeking recovery for alleged breaches of contracts and tortious conduct by Defendants Barnes Personnel Management, Inc. ("Barnes Personnel"), Barnes Employment Group West Coast, Inc. ("Barnes West Coast"), and Marshall Todd Barnes ("Barnes") (collectively, "Defendants"). The dispute arises out of various agreements entered into by the parties, pursuant to which ARA purchased Defendants' accounts receivable and provided payroll services to Defendants. Defendants bring counterclaims alleging that ARA itself breached the parties' agreements and breached a fiduciary duty in failing to carry out certain obligations under the parties' agreements. Defendants also demand an accounting.

On the same day that ARA filed the present lawsuit, it began a garnishment action in Texas state court to garnish funds from Defendants' bank accounts in connection with the torts and breaches alleged in this lawsuit.  Defendants intervened in that garnishment action and brought counterclaims identical to the ones they allege here.  The parties to the Texas action reached a settlement, after which Defendants filed an amended petition for intervention that sought to remove the counterclaims originally asserted.  Shortly thereafter, the Texas court entered an order dismissing the action with prejudice as to all claims and causes of action pursuant to the parties' motion for entry of an agreed final judgment.

Defendants now move for summary judgment on all of ARA's claims with the exception of claims for breach of one factoring agreement.  Defendants also seek summary judgment on their counterclaims for breach of contract, breach of fiduciary duty, and an accounting.  ARA moves for summary judgment, seeking dismissal of the entire action – including its own claims as well as Defendants' counterclaims – on the basis of res judicata.  In the alternative ARA seeks summary judgment on a number of its claims and Defendants' counterclaims, arguing that no issues of material fact remain regarding liability.  Because the Court concludes that all of the claims and counterclaims at issue in the present action were or could have been litigated in the Texas state court action and that the other requirements of res judicata have been satisfied, it will grant ARA's motion for summary judgment to the extent it seeks dismissal on res judicata grounds, deny Defendants' motion for summary judgment, and dismiss the entire action because the remaining claims are barred by res judicata.

## BACKGROUND

### I.    THE PARTIES

ARA is a company that provides liquidity to temporary staffing companies through a transaction known as full recourse factoring.  In a factoring transaction, a business sells its accounts receivable to a third party at a discount.  Individual Defendant Barnes has worked extensively in the professional employer organization industry.  (Dep. of Marshall Todd Barnes ("Barnes Dep.") 67:14-19, Jan. 6, 2014, Docket No. 110.)[1] Professional employer organizations act as off-site human resource departments for companies, allowing their clients to outsource liability for workers' compensation, payroll, and payroll tax, by hiring the client company's employees, thus becoming their employer of record for tax and insurance purposes.  (Id. 67:14-68:4, 70:14-17.)

In May or June 2010, Barnes established Barnes Personnel as a staffing firm, which recruited and hired employees and assigned them to clients to supplement the client's work force.  (Id. 73:5-16.)  In June 2012 Barnes formed Barnes West Coast as another staffing company to handle staffing services for one of Barnes Personnel's existing clients – Harbor Rail Services, Inc. ("Harbor Rail") – in California, Washington, and Oregon, where Barnes Personnel did not operate.  (Id. 85:25-86:21, 90:10-15.)

---

[1] The deposition of Marshall Todd Barnes was filed in its entirety at Docket Number 110. Exhibits 5, 38, 42, 64, and 73 to the deposition were attached to the deposition filing as attachments 1-5 to Docket Number 110.  Exhibits 42, 60, and 70 to the Barnes Deposition were filed as attachments 1-3 to Docket Number 127.  This Order will refer to these exhibits using the exhibit number designated at the deposition.

Barnes West Coast began handling Harbor Rail's staffing needs in those states while Barnes Personnel continued to provide services in Arizona and Texas.  (Second Decl. of John Reid ¶ 4, Jan. 17, 2014, Docket No. 124.)

## II.     RELATIONSHIP BETWEEN ARA AND DEFENDANTS

On May 3, 2011, Barnes Personnel, Barnes, and ARA entered into three contracts – a factoring agreement, a personal guaranty, and a payroll services agreement – that governed their business relationship.  On June 27, 2012, Barnes West Coast and ARA entered into three contracts that are substantially similar in all relevant respects to the contracts with Barnes Personnel.  Under the factoring agreements, Barnes Personnel and Barnes West Coast agreed that they would exclusively sell their accounts receivable to ARA for a discounted price in exchange for ARA's immediate payment of a portion of the receivable amount.  (Barnes Dep., Ex. 5 at 3; *id.*, Ex. 38 at 2.)[2]  To protect against the risk of nonpayment on accounts, the factoring agreements give ARA a security interest in Barnes Personnel's and Barnes West Coast's "business assets" including, among other things, "all accounts" and "all present and future accounts receivable."  (*Id.*, Ex. 5 at 4; *id.*, Ex. 38 at 3.)   With respect to payment of accounts receivable the factoring agreements provide that all factored invoices are to "bear [ARA]'s remittance address." (*Id.*, Ex. 5 at 4; *id.*, Ex. 38 at 3.)  Additionally "[a]ny remittances received by [Barnes Personnel/Barnes West Coast] with respect to Accounts Receivable purchased by [ARA]

---

[2] With the exception of depositions, all references to page numbers in this Order refer to the CMECF pagination.

shall be held in trust for [ARA], and [Barnes Personnel/Barnes West Coast] shall immediately deliver to [ARA] the identical checks, drafts, monies, or other forms of payment received." (*Id.*, Ex. 5 at 5; *id.*, Ex. 38 at 3.)  In the event of termination, the factoring agreements provide that "[u]pon the effective date of termination, all Obligations of [Barnes Personnel/Barnes West Coast] to [ARA] shall become immediately due and payable without further notice or demand." (*Id.*, Ex. 5 at 6; *id.*, Ex. 38 at 5.)

In connection with the factoring agreements, Barnes executed personal guaranties "unconditionally and irrevocably" guaranteeing to ARA "the prompt and complete payment and performance by [Barnes Personnel/Barnes West Coast] when due . . . of the Obligations." (*Id.*, Ex. 38 at 18; *id.*, Ex. 5 at 10.)

The parties also executed payroll services agreements pursuant to which ARA agreed to provide Barnes Personnel and Barnes West Coast with payroll calculations and required payroll tax deposits and filings and "assume[d] liability for withholding tax filings, tax deposits, new hire reporting, and wage garnishments." (*Id.*, Ex. 38 at 16; *see also id.*, Ex. 5 at 17, 20.)  Under the payroll services agreements Barnes Personnel and Barnes West Coast had "responsibility to submit accurate information requested by [ARA] in connection with the Services.   [ARA] will rely on the accuracy of such information in performing the Services and is not responsible for detecting errors, omissions, fraud or illegal acts in [ARA]'s preparation of such information." (*Id.*, Ex. 38 at 12; *id.*, Ex. 5 at 17.)

## III.   BREAKDOWN OF RELATIONSHIP

### A.   Rerouting of Invoices

Pursuant to the factoring agreements, Barnes Personnel and Barnes West Coast assigned to ARA their right to receive payment on invoices from their client Harbor Rail. Harbor Rail was to remit payment to "AGR Funding, Inc." – ARA's funding company which receives all payments on behalf of ARA – at a post office box in New Jersey. (Second Aff. of Scott Cody, Ex. O at 2-3, Jan. 17, 2014, Docket No. 118; *id.*, Ex. P at 4; *id.*, Ex. Q at 8; *see also* Barnes Dep. 14:14-17, 18:8-10.)

At some point in September 2012 Barnes became concerned that payments sent by Harbor Rail to ARA to satisfy invoices were not being timely applied.  Barnes explained "I'd had conversations with Harbor Rails regarding the timeliness of the invoices that they had been paying.  They were sending in invoices to ARA that were not being applied in a – what we would call a timely fashion."  (Barnes Dep. 14:4-10; *see also* Second Cody Aff., Ex. Q at 8-9.)  Barnes testified that with respect to factored accounts receivable the timing of payment is critical because "interest is charged daily on factored money.  If that money shows up today but is not credited for another week, that's money out of my pocket that shouldn't be . . . ."  (Barnes Dep. 14:17-22.)

In light of these concerns, Barnes determined that Harbor Rail should send checks for its invoices directly to the Barnes' entities.  (*Id.* 13:20-14:2, 118:5-8; *id.*, Ex. 42 at 2.) Barnes testified that he directed Harbor Rail to reroute its checks "so that I knew when they were paid" and as "a better way of monitoring when those payments were actually received."  (*Id.* 14:6-10, 24:17-24.)

In response to Barnes' directive, Harbor Rail sent over $200,000 in checks that were subject to the factoring agreements, directly to Barnes Personnel/Barnes West Coast. (*Id.* 21:20-22, 118:5-8.) Barnes deposited these funds into his bank account. (*Id.* 21:13-24.)

## B.    Termination of Agreements

In mid-to late October 2012, ARA discovered that Barnes was diverting payments from Harbor Rail.  (Dep. of David Dourgarian ("Dourgarian Dep.") 120:16-121:18, Jan. 17, 2014, Docket No. 126.)  On October 31, 2012, counsel for ARA in this litigation and ARA's general counsel met with representatives of Harbor Rail to discuss the invoice issue.  (Second Reid Decl. ¶ 2.)  At the meeting Harbor Rail confirmed that it had paid the Barnes entities directly, rather than submitting payments to ARA.  (*Id.*)   On November 1, 2012, counsel for ARA met with Barnes who eventually admitted diverting the funds.  (*Id.* ¶ 3.)  When ARA demanded return of the money, Barnes forwarded approximately $100,000 to ARA, claiming to have used the remainder of the funds for operating expenses.  (*Id.*; Barnes Dep. 21:13-24.)

In light of the issues regarding rerouting of invoices, among other concerns, ARA terminated the agreements without notice pursuant to termination clauses in the factoring agreements, and treated all of its agreements with Defendants as terminated effective October 29, 2012. (Dourgarian Dep. 126:9-22; Barnes Dep., Ex. 5 at 6; *id.*, Ex. 38 at 4-5.)  Within two weeks of October 29, 2012, ARA contacted the Internal Revenue Service and reversed tax deposits made on behalf of Defendants in the amount of approximately

$500,000.   (Dourgarian Dep. 125:25-126:22, 128:5-15.)   ARA also ceased filing tax forms or making tax deposits on behalf of Defendants.   Additionally, Defendants claim that they have been unable to access their accounts or tax information following the termination of the contracts.  (*See* Second Cody Aff. ¶ 35.)

By letter dated November 6, 2012, ARA informed Defendants that "[a] material breach has occurred in the factoring agreement . . . signed between Barnes and ARA . . . related to Barnes' inception of invoice payments."  (Third Aff. of Scott Cody, Ex. A at 1, Feb. 7, 2014, Docket No. 131.)  The letter notified Barnes that "[t]his breach is of such immediacy as to permit ARA to immediately terminate the Agreement, and, pursuant to Section 19 of the Agreement, declare all Obligations immediately due and payable."  (*Id.*, Ex. A at 2.)

## IV.   PROCEDURAL HISTORY

### A.   Complaint

ARA filed a complaint in this Court on November 5, 2012 against Barnes Personnel, Barnes West Coast, and Barnes.  (Compl., Nov. 5, 2012, Docket No. 1.)[3]  In the complaint ARA brings claims for fraud, conversion, civil theft under Minn. Stat.

---

[3] On February 14, 2014, after the present motions for summary judgment were filed and almost fully briefed, United States Magistrate Judge Janie S. Mayeron granted ARA's motion to file an amended complaint containing a request for punitive damages.  (Order, Feb. 14, 2014, Docket No. 136; Mot. to Am. Compl., Jan. 6, 2014, Docket No. 106.)  ARA filed its amended complaint the same day.  (Am. Compl., Feb. 14, 2014, Docket No. 137.)   Other than the request for punitive damages, the amended complaint is identical to the original complaint.  Because the summary judgment motions rely on the original complaint, and its allegations are identical to those in the amended complaint in all material respects for purposes of this motion, this Order refers to the allegations in the original complaint in describing ARA's claims.

§ 604.14, breach of the factoring agreements and personal guarantees, unjust enrichment, and money had and received.

### B.     Counterclaims

On February 11, 2013, Defendants filed counterclaims against ARA.  (Countercls., Feb. 11, 2013, Docket No. 19.)  Defendants bring a counterclaim for failure to pay tax deposits and breach of fiduciary duty arising out of their allegation that, while the payroll service agreements were in effect ARA was obligated, and failed to, file timely tax reports and withhold funds from employees related to Defendants' federal and state taxes. (*Id.* ¶ 26.)   Additionally, Defendants contend that ARA breached its duties when it reversed tax deposits already made on behalf of Defendants and failed to comply with tax obligations through November 6, 2012 – when ARA gave notice of termination of the agreements.  (Def.'s Mem. in Supp. of Mot. for Summ. J. at 12-13, Jan. 17, 2014, Docket No. 117.)  Defendants also request an accounting claiming that "[t]he exact nature and extent of the fees, 'interest', and any other charges as well as what taxes have been paid or not been paid are unknown to Defendants.   ARA has locked out and denied Defendants access to the online software program that might give some information." (Countercls. ¶ 27.)   Finally, Defendants allege that ARA breached its contracts with Defendants "by failing to account for amounts due to Defendants and failing to timely pay the amounts due for the purchase of the receivables as set out in the contracts, both

factoring and payroll services.  In addition, ARA charged fees and interest that were not allowed by contract." (*Id.* ¶ 38.)[4]

### C.      Texas Litigation

#### 1.      Garnishment Action

On November 5, 2012, the same day that the complaint was filed in the present action, ARA began a garnishment action in Texas state court to garnish the bank accounts of Barnes Personnel and Barnes West Coast.  (Sixth Decl. of Daniel J. Cragg ¶ 2, Jan. 17, 2014, Docket No. 125.)  On December 6, 2012, Defendants in the present action moved to intervene in the Texas litigation.  (*Id.* ¶ 3, Ex. A.)  In their petition for intervention, Defendants brought counterclaims against ARA that are nearly identical to those presented in the present litigation; namely, an accounting, interference with prospective and existing contracts, conspiracy to interfere with contract, business disparagement, and breach of contract, as well as a claim for wrongful garnishment.  (*Id.*, Ex. A at 9-12.)  These claims arose out of Defendants' allegations that ARA, among other things, breached the factoring and payroll services agreements by failing to make required tax reports and deposits and failing to forward to Defendants sufficient funds from the purchase of receivables to fund Defendants' month-to-month operations.  (*See, e.g.*, *id.*, Ex. A ¶¶ 23-24, 26, 56.)

---

[4] Pursuant to stipulation of the parties, the Court previously dismissed Defendants' counterclaims for interference with an existing contract, interference with a prospective contract, conspiracy to interfere with a contract, and business disparagement.  (Stipulation for Partial Voluntary Dismissal, Jan. 14, 2014, Docket No. 114; Order, Jan. 17, 2014, Docket No. 120.)

On January 8, 2013, the Texas court heard argument on ARA's motion to strike Defendants' petition for intervention.  (*Id.*, Ex. B at 1.)  Three days later, the court denied the motion to strike and stayed the counterclaims raised by Defendants in the petition "pending resolution of the federal court proceeding in Minnesota . . . except for the claim of wrongful garnishment." (*Id.*)

## 2.     Settlement and Final Judgment

On or about July 20, 2013, the parties to the Texas litigation – including intervening Defendants – reached a settlement.  (Eighth Decl. of Daniel J. Cragg, Ex. A at 1, Feb. 21, 2014, Docket No. 141.)  Pursuant to the settlement agreement, counsel for ARA circulated to counsel for all other parties a motion to dismiss and agreed upon order for the entry of final judgment.  (*Id.*)  When Defendants refused to sign this order, ARA brought a motion to enforce the settlement on September 3, 2013.  (*Id.*)  It appears that the Texas court never ruled on this motion.  (*See* Third Cody Aff., Ex. C at 8.)

On September 6, 2013, Defendants filed an amended petition for intervention. (Third Cody Aff., Ex. B; *see also id.*, Ex. C at 8.)  In the amended petition, Defendants removed all of their counterclaims with the exception of the claim for wrongful garnishment.  (*Id.*, Ex. B.)

On September 11, 2013, ARA filed a motion for entry of agreed final judgment in the Texas state court.  (Sixth Cragg Decl., Ex. C.)  In the motion, ARA stated that the parties to the garnishment action "have entered into a settlement agreement that disposes of all matters in controversy between them asserted in this action." (*Id.*, Ex. C at 1.)  The

motion requested, on behalf of all parties, "that the Court enter an order dismissing this case with prejudice." (*Id.*)  The motion was signed by attorneys for all parties, including Defendants as intervenors, and concluded with a prayer for relief "that this cause be dismissed with prejudice as to all claims and causes of action between the parties." (*Id.*, Ex. C at 1-2.)

The Texas court entered final judgment on the same day.  (*Id.*, Ex. C at 3.)  In the final judgment order, the court noted that ARA "announced to the Court that all matters of facts and things in controversy between ARA, Inc., and Garnishees, Bank of America and Security Service Federal Credit Union and Marshall Todd Barnes . . . have been compromised and settled." (*Id.*)  The court ordered, among other things, "that Barnes Personnel Management, and Barnes West Coast, Inc. take nothing on their claims against ARA, Inc., and shall bear their own costs." (*Id.*)  Finally, the order states that "this order finally disposes of all claims and is final and appealable." (*Id.*)

## ANALYSIS

### I.     STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    RES JUDICATA

ARA argues, as an initial matter that its claims as well as Defendants' counterclaims must be dismissed under the principle of res judicata as a result of the resolution of the Texas litigation.  In ascertaining the preclusive effect of a judgment, "[t]he law of the forum that rendered the first judgment controls the res judicata analysis." *St. Jude Med. S.C., Inc. v. Cormier*, 745 F.3d 325, 327 (8th Cir. 2014) (internal quotation marks omitted); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").  Here, because the preclusive effect of a Texas state court judgment is at issue, the Court applies Texas law to the res judicata question. *See Myer v. Americo Life, Inc.*, 469 F.3d 731, 733-34 (8th Cir. 2006) (applying Texas law to determine the preclusive effect of an earlier Texas state court's decision).[5]

---

[5] The Court notes that it is immaterial that the present action and the Texas action began on the same day, and the Court need not determine which was technically filed first because "[t]he date of rendition of the judgment is controlling for purposes of res judicata, not the dates of commencement of the action creating the bar or the action to be affected by the bar." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000) (internal quotation marks omitted).

Under Texas law "[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). A party invoking the preclusive effect of res judicata must demonstrate "(1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The parties do not dispute that the second element has been met here because all parties to this lawsuit were also parties to the Texas action. Accordingly, the Court will consider only whether the Texas court entered a final judgment on the merits and whether the present litigation is based on claims that were or could have been brought in the Texas action.

## A.      Final Judgment

Generally "[a]n agreed order or judgment of dismissal in settlement of a controversy is a judgment on the merits." *Jistel v. Tiffany Trail Owners Ass'n, Inc.*, 215 S.W.3d 474, 480 (Tex. App. 2006); *see also Tu Nguyen v. Bank of Am., N.A.*, 516 F. App'x 332, 335 (5th Cir. 2013) (finding a final judgment on the merits for purposes of res judicata where "[t]he parties submitted an agreed motion to dismiss with prejudice, the district court entered an order dismissing with prejudice, and Nguyen neither challenged the judgment nor tried to reopen the case"); *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 400-01 (5th Cir. 2009) (finding a final judgment where the parties "entered

a joint motion to dismiss that advised the district court that they had settled their dispute" and the court dismissed with prejudice).[6]

Here, the parties specifically agreed that the matters raised in the Texas garnishment action had "been compromised and settled" and requested that the court "enter an order dismissing this case with prejudice . . . as to all claims and causes of action between the parties." (Sixth Cragg Decl., Ex. C at 1.) The court entered an order based on this agreement ordering that Defendants "take nothing on their claims against ARA, Inc." and further stating that "this order finally disposes of all claims and is final and appealable." (*Id.*, Ex. C at 3.) The Court concludes that this constitutes a final judgment on the merits for purposes of res judicata.

---

[6] At oral argument counsel for Defendants argued for the first time that there may not have been a final judgment for res judicata purposes because the Texas state court lacked jurisdiction as a result of various forum selection clauses in the parties' agreements. Some of the parties' agreements contain clauses providing that disputes arising under or related to the agreements shall be commenced and maintained exclusively in Minnesota courts. (*See, e.g.*, Barnes Dep., Ex. 5 at 20; *id.*, Ex. 38 at 14.) But "forum selection clauses do not deprive a court of jurisdiction that otherwise would have jurisdiction." *Gen. Res. Org., Inc. v. Deadman*, 907 S.W.2d 22, 27 (Tex. App. 1995). Rather, a forum selection clause merely represents a contractual agreement between the parties regarding the location of a suit. *See Welch v. Nightingale Nurses, LLC*, No. 07-08-0305-CV, 2009 WL 1531497, at *2 (Tex. App. 2009) ("While a forum selection clause does not deprive a trial court of jurisdiction, it does provide a basis upon which the trial court can dismiss the proceeding without prejudice. In other words, a dismissal based upon a forum selection clause is not a dismissal for want of jurisdiction; it is instead a dismissal based upon an enforceable contractual agreement between the parties fixing the exclusive jurisdiction in a specific location." (citing *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009))); *see also Mathers Family Trust ex rel. Mathers v. Cagle*, Civ. No. 13-1035, 2013 WL 3455489, at *5 (N.D. Tex. July 8, 2013). Defendants have identified, and the Court has found, no basis for concluding that the Texas court otherwise lacked subject matter jurisdiction over the parties' dispute. Accordingly, the Court concludes that the Texas court's entry of final judgment was sufficient to satisfy the first element of the res judicata analysis.

**B.      Same Claims**

The primary subject of dispute between the parties is whether the counterclaims raised by Defendants here were or could have been raised in the Texas action.[7]  Although res judicata typically "only applies to the cause of action filed by the plaintiff" and compulsory counterclaims, "where a defendant does interpose a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the defendant becomes a counter-defendant for res judicata purposes and is required to assert all claims against the plaintiff arising from the subject matter of the original claim." *Musgrave v. Owen*, 67 S.W.3d 513, 519 (Tex. Ct. App. 2002) (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992)).  Because Defendants do not dispute that they asserted at least one counterclaim in the Texas state court action, the doctrine of res judicata is applicable to counterclaims they later seek to bring in other fora.

The claim preclusion aspect of res judicata "bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims which, through the exercise of diligence, could have been litigated in a prior suit." *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2007) (internal quotation marks omitted).  Texas has adopted the transactional approach to determining what claims could have been litigated in the prior suit.  *See State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52

---

[7] Because ARA is voluntarily seeking the dismissal of its own claims, the relevant question for purposes of res judicata preclusion is whether Defendants' counterclaims are barred. In light of ARA's position, the Court has not undertaken an independent analysis of whether ARA's claims were or could have been brought in the Texas litigation.

S.W.3d 693, 696 (Tex. 2001) (citing *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Savings*, 837 S.W.2d 627, 630-31 (Tex. 1992)).   Under this approach the Court "giv[es] weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Barr*, 837 S.W.2d at 631 (citing Restatement of Judgments § 24(2)).   In determining whether res judicata bars later claims courts focus, under the transactional approach, on the factual basis for the claims not the precise legal theories presented and "[t]he main concern is whether the cases share the same nucleus of operative facts."   *Thompson v. Weaver*, No. 12-13-00151-CV, 2014 WL 1697019, at *3 (Tex. App. Apr. 30, 2014). Texas courts have held that "[w]here there is a legal relationship, such as under a lease, a contract, or a marriage, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata." *Musgrave*, 67 S.W.3d at 520.

Defendants argue that although they brought identical counterclaims in the Texas action to those presently pending before the Court, the Texas court did not enter final judgment as to those counterclaims because Defendants voluntarily withdrew them prior to the entry of final judgment.   Because "Defendants' counterclaims were not fully and finally adjudicated in Texas," Defendants contend that res judicata "has no applicability here."   (Def.'s Mem. in Opp'n to Mot. for Summ. J. at 4, Feb. 7, 2014, Docket No. 130.) Even assuming that Defendants' act of filing an amended petition for intervention more than a month after the parties had reached a settlement and five days prior to the Texas

court's entry of final judgment removed the counterclaims from the case,[8] that does not

end the Court's res judicata inquiry.   The relevant question, as explained above, is

whether the counterclaims "through the exercise of diligence, **could have been** litigated

in a prior suit."  *Hallco Tex., Inc.*, 221 S.W.3d at 58 (emphasis added).[9]

---

[8] Under Texas law "[p]arties may amend their pleadings . . . at such time as not to operate as a surprise to the opposite party." Tex. R. Civ. P. 63.  "Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause . . . ." Tex. R. Civ. P. 65.  It certainly seems possible that an amended pleading filed more than a month after settlement and five days prior to the entry of agreed upon final judgment could be set aside on exception on the basis that it operated as a surprise to ARA.  Because Defendants' counterclaims are barred by res judicata regardless of whether they remained live claims in the Texas action at the time of the entry of final judgment, the Court does not decide whether Defendants' amendment of its petition properly removed the counterclaims from the litigation.

[9] The Court notes that Defendants expressly declined to address the issue of whether the counterclaims they bring here could have been litigated in the Texas action, based on their assertion that ARA claimed "only that the Defendants' counterclaims **were** adjudicated in Texas," and has not "alternatively argued that the counterclaims **could have been** adjudicated in Texas," and therefore Defendants were not required to respond to the argument.  (Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 4 n.11, (emphases in original).)   But Defendants' interpretation of ARA's original argument is unduly narrow.  In its brief in support of its motion for summary judgment ARA argues that:

> The Texas District Court took jurisdiction over the counterclaims brought by Barnes Personnel and Barnes West Coast in the garnishment action brought there – counterclaims that are identical to those advanced by Counterclaimants in this action.  The Texas District Court, with the consent of the parties, dismissed all claims in the Texas action with prejudice and entered a final, appealable judgment.  Finally, the Texas action was between the same parties as this suit, and involved the same causes of action, based on the same nucleus of operative facts.  Therefore res judicata operates here to preclude all claims currently before this Court between all parties.

(Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 13, Jan. 17, 2014, Docket No. 123.)  This argument can fairly be read as encompassing the contention that the counterclaims raised here are barred because they are based on the same nucleus of operative facts as the Texas litigation – a position that does not require the Texas court to have entered final judgment on the identical counterclaims raised here in order for res judicata to bar the claims as ones that could have been

(Footnote continued on next page.)

Here, it is clear from the record that Defendants' present counterclaims arise out of the same transaction giving rise to the garnishment action and therefore could have been raised in the Texas litigation.  That the counterclaims could have been litigated in Texas is perhaps best evidenced by the fact that Defendants did, in fact, bring identical counterclaims in their original petition for intervention.  The counterclaims were filed in response to ARA's action to garnish Defendants' bank accounts which was initiated by ARA in order to compensate it for the losses occasioned by Defendants' alleged breaches of the various agreements between the parties and tortious conduct associated with those breaches.  ARA's garnishment and Defendants' counterclaims share the same nucleus of operative facts as they both arise out the factoring and payroll services agreements and the parties' performance of those agreements.  Accordingly, based on a straightforward application of the transactional approach, the Court concludes that the counterclaims Defendants presently seek resolution of are barred by the doctrine of res judicata.

Defendants have provided, and the Court has located, no support for the proposition that voluntarily removing claims from a pleading – without more – preserves those claims for later litigation under the doctrine of res judicata.  This runs counter to the

_____

(Footnote continued.)

brought.  More fundamentally, Defendants misconstrue the purpose and scope of a reply brief. The local rules provided that "[a] reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response," D. Minn. LR 7.1(c)(3)(B), indicating that arguments that **are** related to the opposing party's response are appropriate material for a reply brief.  Here, to the extent that ARA raised the argument that claims which could have been brought in the Texas litigation as well as those that were actually brought are barred by res judicata, this argument was properly in response to Defendants' argument that their counterclaims were not actually adjudicated in the Texas litigation.

fundamental principle of res judicata which precludes in a second suit all "causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit." *Garcia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984). Here, Defendants have made no argument that the present counterclaims could not have been litigated as part of the Texas action.  Indeed, when identical counterclaims were brought in Texas, the Texas court refused to strike the counterclaims and instead took jurisdiction over the claims, staying its resolution of the claims pending the outcome of litigation in this Court.  Rather than allow the Texas litigation to proceed, however, Defendants decided to enter into a settlement that would resolve all of the claims between the parties and agreed to the entry of final judgment and dismissal with prejudice.  In neither the settlement nor the agreed upon order entering final judgment did Defendants seek to preserve their ability to litigate in a different forum counterclaims that could have been brought in the Texas action.  Defendants have also made no argument that they were deprived of a full and fair opportunity to litigate their counterclaims, for example, by arguing that they were somehow prevented from preserving those claims for litigation here through the terms of its settlement or the agreed upon final order it submitted to the Texas court.  It appears that Defendants attempted an end-run around res judicata by filing an amended petition for intervention seeking to remove the counterclaims from the Texas action, but as explained above this attempt is insufficient to defeat the operation of res judicata because it does not alter the fact that these counterclaims could have been litigated in Texas.  Accordingly, the Court will grant ARA's motion for summary

judgment to the extent it seeks dismissal of its own claims and Defendants' counterclaims on the basis of res judicata.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion for Summary Judgment [Docket No. 121] is **GRANTED in part** and **DENIED in part** as follows:

    a.     Plaintiff's Motion is **GRANTED** to the extent it seeks dismissal of its claims and Defendants' counterclaims on the basis of res judicata.   Those claims and counterclaims are **DISMISSED with prejudice**.

    b.     Plaintiff's motion is **DENIED as moot** in all other respects.

2.     Defendants' Motion for Summary Judgment [Docket No. 116] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  July 30, 2014                    _____s/ John H. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                  United States District Judge